IN CHATHAM SUPERIOR COURT, JULY, 1832.

WAKEMAN and Wife *vs.* WILLIAM ROACHE.

### *Dower.*

The statute of limitations of 1767, is no bar to an application for the assignment of dower.

The husband by alienation cannot divest the estate which the law casts upon his wife, nor can it be done by public sale under execution.

UPON the application of the plaintiffs to have an assignment of dower under the act of 1824, the defendant plead in bar the statute of limitations, and on the trial of the issue thereupon made up, the jury returned a verdict for the plaintiffs. This is a motion for a new trial, and the question the court is called on to decide is upon the validity and efficiency of the plea so offered in bar.

The court, in the course of its investigation of this question, has found no case, in which the right to have an assignment of dower has been held to be embraced within the provisions of either of the English statutes of 32 Hen. 8. c. 2, or of 21 Jas. 1. c. 16. On the contrary, the authorities lead to a different conclusion. In equity, upon a bill filed for an assignment of dower and an account of the arrears, it is declared by numerous decisions, that there is no limitation either in equity or at law without some special ground, and the account is uniformly carried back to the death of the husband without regard to time, notwithstanding the general rule of a Court of Equity is, to adopt a period in analogy to the statute of limitations. Curtis *v.* Curtis, 2 Brown. C. C. 620. Mundy *v.* Mundy, 2 Ves. jr. 122. Oliver *v.* Richardson, 9 Ves. 222. and the note to Boyle *v.* Rowand, 3 Dess. Rep. 556. Park, in his treatise on Dower, says, that no statute of limitations has prescribed any period for the bringing of a writ of dower. Park on Dower, 311. Chancellor Kent says, dower is not within the ordinary statutes of limitations of England. 4 Comm. 68. If the remedy, by which the right to an assignment of dower is attempted to be enforced, be considered as partaking of the nature of a real action as in the writ of right of dower, the statute of 32 Hen. 8. cannot apply to such remedy, because it does not extend to cases where the demandant does not count upon the seisin of himself or his ancestor. Ang. on Lim. 33.

And for the same reason it would be inapplicable to any possessory real action brought for an assignment of dower. If the remedy be of the class of possessory actions it is not embraced by the 21 Jas. 1. c. 16, because until assignment the doweress has no right of entry. A doweress is considered in regard to her title as being in possession of the lands assigned to her by her husband. Her estate is a continuation of her husband's; and upon the assignment of her dower, in legal contemplation, she is in from the death of her husband. She cannot be said, therefore, to declare upon the possession or seisin of

CHATHAM,
July, 1832.

WAKEMAN and
Wife
v.
ROACHE.

herself or ancestor.    Three things are necessary to complete a title to a dower, marriage, seisin and death of husband.    Upon the concurrence of these requisites, the title is consummated. Did it confer a corresponding right of reducing it to possession by entry, there could, it is apprehended, be no reason why the statute of James should not be a bar.    But complete as the title is, it confers no such right.    The title of the widow to be endowed is not of an undivided third of the entirety, but of a third part in severalty.    Until that third part is ascertained and assigned by metes and bounds, she has no right of entry.    Upon what would she enter?    An undivided third ?    She is not a tenant in common, and therefore this cannot be.    Before the assignment of dower, her right rests merely in action ; and until that right is reduced to certainty, by the ascertainment of her third part in severalty, there is nothing upon which she can enter, or which she may reduce to possession.    Upon this subject the authorities are conclusive.    In all cases, says Littleton, where the certainty appeareth what lands or tenements the wife shall have for her dower, then she may enter after the death of her husband without assignment.    But when the certainty appeareth not, as to be endowed of the third part to have in severalty, it behoveth that dower be assigned unto her after her husband's death, because it doth not appear before assignment what part of the land she shall have.    Little. 43.    Coke says, when the demand is uncertain, as in writs of dower at common law, there, albeit the thing itself be certain, yet shall she not take it without assignment.    Co. Lit. 37. b. ; 37. a. Park says, although the title of dower is consummate on the death of the husband, the title of entry does not accrue until the ministerial act of assigning to her a third part in certainty has been performed by some other person.    In the mean time, her situation is an anomalous case in the law of England. It is probably the only existing case in which a title, though complete, and unopposed by any adverse right of possession, does not confer on the person in whom it is vested, the right of reducing it into possession by entry.    Park on Dower, 324. That the widow cannot enter for her dower until it is assigned is affirmed in the following American authorities : 7 John. Rep. 247 ;  17 John. 167 ;  20 John. 411 ;  4 Munf. 382 ; 5 Munf. 346.    All possessory actions are founded on the right of entry, and it is for this reason that the action of ejectment cannot be maintained for dower before assignment.    Adams on Ejectment, 69 ;  Doe ex Dem. Nutt *v.* Nutt, 2 Com. p. 430.    If the writ of dower *unde nihil habet* be of the class of possessory actions, the statute of James could not commence to run against it until the right of entry accrued.

It is the right of entry which this statute bars—the principle on which it operates is, that there must be a right of entry existing at the time of the bar which can be affected.  *Eo*

*nomine* it embraces writs of formedon in descender, remainder and reverter, and then proceeds "That no person that now hath any right or title of entry, shall thereunto enter, &c." The statute of limitations of Connecticut, declares that no person shall at any time hereafter make entry into any lands or tenements, but within fifteen years next after his right or title shall first descend or accrue to the same. It is for the purpose of this question, substantially the same with the statute of James, and it has received the same construction, for it is held in that State, that the statute of limitations does not bar the claim of dower. Swift's sys. 256.

Several cases have been referred to from the English books, by counsel who argued this motion for the defendant, for the purpose of showing that this claim was embraced within the English statutes, Co. In. 216. Dyer, 224, and others, were all founded upon the statute of 4 Hen. 7, or statutes of non-claims—and it was also contended that there was an analogy between the present question and the case of a fine levied with proclamations. But no such analogy can exist; the two cases are entirely distinct and must be decided upon wholly different principles. The statute of non-claims declares that a fine levied with proclamations *shall be a final end, and conclude all privies and strangers to the same.* This statute is in affirmance of the common law, altering only the time within which the claims must be interposed. A fine so levied is matter of record—it is a judgment of the court. It not only transfers the right of the vendor, but also extinguishes the rights of all others who do not claim within the time prescribed. It operates not merely as a bar to the remedy, which is the characteristic of the ordinary statutes of limitations, but is *per se* an investment of a good, perfect and complete title, and therefore a law of the *right* as well as *remedy* of all other persons. Cruise's Dig. tit. Fine. 2 Inst. 713. 13 John. Rep. 428. 2 Gal. Cir. Ct. Repts. 318.

So far as the case, which has been cited from 1 S. C. Com. Rep. 112, was attempted to be supported by the English cases, which were invoked to its aid, these cases being decided upon the statute 4 Hen. 7. must fail to afford the desired assistance, unless the provisions of the statute of limitations of South Carolina are analogous to those of the statute 4 Hen. 7. and then it would afford no assistance in the interpretation of our statute. Considered as the judgment of the court, apart from the authority of the English cases, upon the words of the South Carolina statute, it is an authority directly, so far as that statute is analogous to ours.

We shall now proceed to the consideration of our own statute. It is almost a transcript of the 21 Jas. 1. c. 16. but with this addition, after specifying writs of formedon, &c. it says *or any other writ, suit or action whatsoever.* These words would seem sufficiently comprehensive to embrace every re-

medy ; and unless the case of dower is excepted because of its own distinguishing peculiarities, it must be included. Every title, as it accrues, carries with it, and confers on him in whom it is vested a right to reduce the same to possession by entry. In this respect we have seen that the title of dower is peculiar and forms an exception. It is as Park observes, the only probable case in which a complete title does not confer the right to reduce the same to possession by entry. Our statute, like that of James, and unlike that of 4 Hen. 7. does not take away or destroy the right, it only bars the remedy. We have no droit or real actions. The only action known to us for trial of title to lands, is the action of ejectment. If, however, the statute should be held to operate as a bar to the enforcement of a mere right, unattended by a right of entry to be affected by it,—there is nevertheless an insuperable difficulty in the court's mind to the application of it in this case. We have seen there is a continuity of title from the husband to the wife ; that after assignment she is in by relation from the death of the husband ; the intermediate entry and seisin of the heir between the death of husband and assignment, is not adverse, and does not disturb the continuity of title. Coke says, the law adjudgeth no mesne seisin between the husband and wife. Co. Lit. 241. a. See also Park on Dower, 156, 340. The assignment is considered as proceeding from and made by the husband, and this notwithstanding the estate is created by operation of law without regard to the will of the husband, and notwithstanding the intermediate possession by the heir. It is obvious from these principles, that the right of action to have an assignment of dower does not result from any adverse right of possession in the heir or feoffee, and as a consequence, says Park. 335, the mere possession of the heir or feoffee can never become a bar to the title of the wife. A possession under color or claim of title to be a good bar under the statute, must be founded upon an *adverse right* of possession. It is consequently affirmed that an adverse possession will be negatived, when the parties claim under the *same title*, or when the *possession* of one party is consistent with the *title* of the other. Adams on Eject. 50. Contrary to the decisions of many of the other States, it has been held (at least in the Eastern Circuit) that a mere naked possession, without color of title, would give the occupant a right to so much as he had actually enclosed—but when possession is taken under a claim of title, the nature of that possession will be fixed with reference to the title under which it is taken.

The defendant in the present case is a purchaser. The property appears to have been sold in 1822 as the property of the husband at public sale. It was bid off by Wilcox, who in ten days thereafter conveyed it to Gribbon, the legal representative of the husband. At the sale, at which Wilcox

purchased, it was in proof to the jury that a public notice was given of the claim of the widow. The property was mortgaged by Gribbon to the bank of Darien, who afterwards foreclosed and sold, and Roache, the defendant, became the purchaser, he being the legal representative of Gribbon the deceased. These facts were all before the jury, and the court sees nothing in them to change the question in this case; or, as furnishing any special ground to take the case without the operation of the general principle laid down—as the husband, by his alienation, could not divest the estate which the law cast upon his wife, so a public sale under execution would not. Considering the relation in which Gribbon stood to Stanton's estate, and the circumstances of his purchase, and the relation which Roache maintained to Gribbon's estate, together with the doctrine, that it is the duty of a purchaser to look with diligence and care to all these facts, upon the enquiry of which, he may be put by the title deeds under which he claims, or to which they necessarily direct his attention, the court sees no reason to be dissatisfied with the verdict of the jury. Another ground upon which the motion rested, was, that additional proof could be produced to them that the auctioneer did not hear the notice given at the sale in 1822. Such evidence could not weigh against the positive testimony of the fact, nor does the court consider that notice, under the circumstances of this case, as important. Upon the whole, the court is of opinion that the motion for a new trial in this case ought to be denied; and it is ordered that the supersedeas heretofore granted be discharged.